White, J.
The only question in this case is, whether the evidence supports the verdict. The jury was instructed as requested by the defendant; and as the instructions are not set out in the record they must be presumed to have been correct.
It appears from the evidence that the defendant in excavating for the avenue on the hillside, below the plaintiff’s premises, caused damages to his lot as well as to the improvements. The aggregate amount of such damages is stated to have been $985; but how much of that sum is attributable to the lot without the improvements, and how much to the improvements is not specifically stated. The jury assessed the damages at $450, which was less than half the damages admitted to have been sustained, including the damages to the improvements. The finding of the jury must be presumed to have been in accordance with the instructions of the court, and may have included only the damages to the lot without reference to the improvements.
The excavation on the upper side of the avenue, opposite the plaintiff’s premises, was twelve feet; and the whole surface of the hill moved from a point on Sixth street down, passing diagonally under the plaintiff’s dwelling, showing a wide opening in the ground.
A. E. Tripp, the city civil engineer, testified:
*147 “ The cut caused the slip, and we did nothing to stop the slip; I saw it at the time. A retaining wall would be the only way to stop a land slide, to put it in by sections as the cut progressed. We made no wall in front of Keating’s lot.”
A. L. Anderson, who was the city civil engineer at the time of the trial, testified as follows:
“The hill is of alternate layers of clay, more or less hardened, and limestone and surface soil; it is the latter that slips on the smooth surface of the former. There is no way to prevent the slipping, except by a retaining wall or drains on the property, made more cheaply by trenches and drains up the hill itself, dug down to the solid part of the hill so as to carry away the water, which causes the surface to slide on the layers of blue clay underneath, as if on glass. It is impossible to foresee the weight of the soil that will slip, so as to know the size of retaining wall required.”
It was admitted that the city built no retaining walls opposite any of the property on the avenue at the time in controversy ; but that she did subsequently.
This case is governed by the principles settled by our own decisions, whatever may have been held elsewhere. In Rhodes v. The City of Cleveland it was held that a municipal corporation, acting within the scope of its powers, was liable for cutting ditches and water-courses in such a manner as to cause the water to overflow and wash away the plaintiff’s land. In the opinion of the court the principle of the decision is thus stated: “ That the rights of one should be so used as not to impair the rights of another, is a principle of morals, which, from very remote ages, has been recognized as a maxim of law. If an individual, exercising his lawful powers, commits an injury, the action on the case is the familiar remedy; if a corporation, acting within the scope of its authority, should work wrong to another, the same principle of ethics demands of them to repair it, and no reason occurs to the court why the same should not be applied to compel justice from them.” 10 Ohio, 160. This case was decided more than forty years ago, and has been often approved since. McComb v. Akron, 15 Ohio, 479; Akron v. McComb, 18 Id. 229; *148 Crawford v. Delaware, 7 Ohio St. 459. See also Pumpelly v. Green Bay Company, 13 Wall. 166; and Eaton v. Railroad Company, 51 N. H. 504.
In this state, private property is entitled to the same protection against all classes of corporations as against natural persons, subject to.the right of appropriating such property to public use upon the terms of making full compensation.
The case under consideration involves no question of inconvenience to the owner, caused by the making of a neighboring or abutting public improvement, leaving the corpus of the property intact; but the case is one of the invasion or injury of the property itself. And it can make no difference in principle, whether the property is flooded and the soil washed away, or the property is injured and the soil removed from some other cause. It is the injury to the property that gives the right of action; and the author of it is bound to make reparation.
It is claimed on behalf of the city that as the plaintiff’s lot does not abut on the avenue, and as the damages resulted from the removal of the lateral support to the abutting property, the city is not liable. The fact that the property of others intervened between the lot of the plaintiff and the avenue can make no difference. The liability would be the same whether the several parcels were owned by one or by different owners. The liability of the city did not depend upon the character of the ownership of the damaged property; but upon the extent to which its wrongful act was the cause of the damages.
In regard to the buildings and improvements, it may be said that there is nothing in their character or in the circumstances, to indicate that the slide in the lands would not have occurred as it did, if they had not been there. The additional weight which they imposed cannot reasonably be supposed to have constributed materially to the giving away of the soil.
The case of Gilmore v. Driscoll (122 Mass. 199), relied upon by the defendant, fully supports the verdict in this case, and would have warranted the jury in allowing the damages to the improvements as well as to the lands, where the plaintiff is not chargable with negligence in making them. On page *149 205, referring to the former case of Foley v. Wyeth, it is said, “ that the right of support from adjoining soil for land in its natural state stands on natural justice, and is essential to the protection and enjoyment of property in the soil, and is a right of property which passes with the soil without any grant for the purpose. ‘ It is a necessary consequence from this principle, that for any injury to his soil, resulting from the removal of the natural support to which it is entitled, by means of excavation of an adjoining tract, the owner has a legal re-’ medy in an action at law against the party by whom the work has been done and the mischief thereby occasioned. This does not depend upon negligence or unskillfulness, but upon the violation of a right of property which has been invaded and disturbed. This unqualified rule is limited to injuries caused to the land itself, and does not afford relief for damages by the same means to artificial structures. For an injury to buildings, which is unavoidably incident to the depression or slide of the soil on which they stand, caused by the excavation of a pit on adjoining lands, an action can only be maintained when a want of due care or skill, or positive negligence, has contributed to produce it.’ ”
It is upon this principle that the City of Cincinnati v. Penny (21 Ohio St. 499) was decided. The city in that case was held exempt from liability for damages to buildings, because it was free from negligence in making the excavation. The same rule of liability from'want of proper care and skill is held in City of Quincy v. Jones, 76 Ill. 232.
The evidence in this case would have warranted the jury in finding that the city failed to exercise such care and skill in making the avenue in question; and hence the judgment of the court of common pleas ought not to have been reversed.

Judgment of the district cowrt reversed; and that of the common fleas affirmed.

Longworth, J., did not sit in the case.